UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL NO. MJ04-M-282-JLA

UNITED STATES OF AMERICA

V.

NUEREL CARR, a/k/a FREDERICK D. BROWN, a/k/a COX

and

MICHAEL McDONALD

**ORDER ON DETENTION**

ALEXANDER, M.J.

   The defendants, Nuerel Carr and Michael McDonald, appeared before this Court on December 7, 2004, for a probable cause and detention hearing pursuant to a complaint charging them with violations of 21 U.S.C. § 841(a)(1) (possession with intent to distribute cocaine) and 18 U.S.C. § 2 (aiding and abetting). Attorney Edward L. Hayden represented Mr. Carr, Attorney John M. Moscardelli represented Mr. McDonald, and Assistant United States Attorney David G. Tobin appeared on behalf of the government. The government moved to detain the defendants pursuant to 18 U.S.C. §§ 3142 (f)(1)(C) (the offense carries a potential of ten or more years imprisonment pursuant to the Controlled Substances Act) and (f)(2)(A) (serious risk of flight).

During the detention hearing, the government presented the credible testimony of Special Agent Peter Darling, a six year veteran of the Department of Homeland Security, Immigration and Customs Enforcement ("ICE") (formerly the United States Customs Service). The Court was also aided by a Pretrial Services Report ("PTS Report"). Special Agent Darling's credible testimony includes the averments set forth below.

Special Agent Darling is currently assigned to ICE's field office in Boston, Massachusetts, and works as part of a narcotics smuggling group that investigates narcotics violations. On November 23, 2004, Special Agent Darling received a telephone call from a supervising inspector at Logan Airport. Customs officials had detected drugs stored in a rum bottle and a "Nonnie Juice" bottle in the luggage of an individual named Donovan Sorrell. Field tests on the drug revealed it to be cocaine.

Mr. Sorrell, after being advised of his Miranda rights, agreed to cooperate with law enforcement. During an interview with Special Agent Darling, conducted at the airport, Mr. Sorrell stated that he knew that he was carrying drugs, and that he had made two prior trips from Jamaica to Boston carrying drugs in a similar manner stored in bottles. Mr. Sorrell stated that on the previous trips he had, under the instruction of his contact in Jamaica, traveled to the Best

2

Western Inn in Quincy, Massachusetts, after arriving in Boston. Mr. Sorrell's contact in Jamaica was a man that Mr. Sorrell knew as "Bones." Once at the hotel, Mr. Sorrell would call Bones to inform him of his arrival. An individual who went by the name of "Cox" would then come to the hotel to pick up the drugs and to pay Mr. Sorrell for transporting the drugs. Cox was later identified as defendant Nuerel Carr. Mr. Sorrell also stated that on his first trip he was paid $ 4,000, and on the second, $ 5,000.

In cooperation with, and in the company of, federal agents, Mr. Sorrell proceeded from the airport to the Best Western Inn. He telephoned Bones in Jamaica, and then a second contact, "Winston," telephoned Mr. Sorrell at the hotel to ask why Mr. Sorrell arrived at the hotel later than expected. Mr. Sorrell explained to both Bones and Winston that his flight was late, but that everything was okay.

With the continued cooperation of Mr. Sorrell, a controlled delivery of the drugs was conducted on November 24, 2004, at the Best Western Hotel. At approximately 9:30 a.m., a male matching the description of Mr. Carr provided by Mr. Sorrell arrived at the hotel in a car driven by another individual. The driver, to whom the car was registered, was later identified as defendant Michael

McDonald. Prior to the Mr. Carr's and Mr. McDonald's arrival, federal agents were stationed both inside and outside the hotel.

Mr. McDonald parked and remained in the car while Mr. Carr entered Mr. Sorrell's hotel room. When Mr. Carr left Mr. Sorrell's hotel room, he was carrying a bag containing the two bottles that, in turn, held the cocaine. Mr. Carr was immediately arrested. Additionally, agents surrounded Mr. McDonald's car, ordered Mr. McDonald out of the car, and arrested him as well.

The agents then questioned Mr. Carr and Mr. McDonald separately. Mr. Carr admitted that he had made two prior pick ups from Mr. Sorrell, although when asked if he was picking up drugs, Mr. Carr responded that the money that he gave to Mr. Sorrell was not Mr. Carr's money. Mr. Carr also stated, when questioned about what he was supposed to do with the two bottles that he received from Mr. Sorrell, that Winston was coming to Mr. Carr's house to pick up the bottles.

Mr. McDonald, in turn, stated that Mr. Carr had contacted him earlier that same day to ask if Mr. McDonald could give Mr. Carr a ride to the hotel. Although Mr. Carr told Mr. McDonald that he was going to the hotel to pick up rum, Mr. McDonald also told the federal agents questioning him that he understood rum to mean cocaine. Mr. McDonald also stated that on previous

occasions he had purchased cocaine from Mr. Carr, and suggested that he purchased large amounts of cocaine for re-sale rather than small amounts intended solely for personal use. Finally, Mr. McDonald stated that he had hoped or expected to purchase cocaine from Mr. Carr right after Mr. Carr picked up the cocaine from Mr. Sorrell.

On the basis of Special Agent Darling's testimony and other documentary evidence, the Court FINDS that there is PROBABLE CAUSE to believe that the defendants committed the offenses with which they are charged. Following Agent Darling's testimony and argument by the government, Mr. Carr consented to detention. The remainder of this Order, therefore, addresses detention only as to Mr. McDonald.

With the aforementioned evidence in mind, the Court engages in the detention calculus. Pursuant to the Bail Reform Act of 1984, this Court shall detain a criminal defendant pending trial upon a determination that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community. . . ." 18 U.S.C. § 3142 (e); United States v. Montalvo-Murillo, 495 U.S. 711, 716-17 (1990). "With regard to risk of flight as a basis for detention, the Government must prove by a preponderance of the evidence that no combination of conditions will

reasonably assure the defendant's appearance at future court proceedings." United States v. DiGiacomo, 746 F. Supp. 1176, 1180-81 (D. Mass. 1990). The burden of persuasion remains with the Government on the question of flight risk. See DiGiacomo, 746 F. Supp. at 1181 (citing United States v. Jessup, 757 F. 2d 378, 381-82 (1st Cir. 1985)).

The issue of whether the defendant poses a danger to the community has a different requirement. The Government must prove by clear and convincing evidence that no combination of conditions will reasonably assure the safety of any other person and the community. United States v. Chimurenga, 760 F.2d 400 (2d Cir. 1985). The meaning of clear and convincing evidence does not imply that the judge be "plumb sure" that there is no set of conditions that will protect the public, but the judge should be "pretty sure." United States v. Gray, 651 F. Supp. 432 (W.D. Ark. 1987), aff'd, 855 F.2d 858 (8th Cir.), cert. denied, 488 U.S. 866 (1988).

However, in cases involving violations of the Controlled Substances Act, 21 U.S.C. § 801 et seq., for which the defendant may be imprisoned for 10 or more years, there is a rebuttable presumption that there is "no condition or set of conditions [that] will reasonably assure the appearance of the person and the safety of any other person and the community." 18 U.S.C. § 3142(e). This rebuttable

presumption operates to shift the burden of production, but not the burden of persuasion, to the defendant.  See Jessup, 757 F.2d at 381.  The rebuttable presumption reflects Congress's belief that narcotics traffickers have the resources and contacts to flee to other countries, and that they pose particular risks of recidivism if released pending trial.  United States v. Arroyo-Reyes, 32 F.3d 561, 1994 WL 440654, at * 3 (1st Cir. 1994) (Table) (per curiam) (citing United States v. Palmer-Contreras, 835 F.2d 15, 17 (1st Cir 1987)); United States v. Williams, 753 F.2d 329, 335 (4th Cir. 1985).  See also United States v. Portes, 786 F.2d 758, 765 (7th Cir. 1985).  Nevertheless, because of the interference of pre-trial detention with the "importan[t] and fundamental . . . right" of liberty, United States v. Salerno, 481 U.S. 739, 750 (1987), this Court will not make such a finding lightly.  The Court's independent analysis regarding detention is governed by the rubric set forth in 18 U.S.C. § 3142(g).

First, the Court looks to the nature and circumstances of the offense charged against the defendant.   It is beyond peradventure that the controlled substance at issue in this case, cocaine, is a significant problem for this society.

Second, the Court looks to the weight of the evidence against Mr. McDonald.  Here, the evidence is not insignificant and, as previously discussed, is sufficient to establish probable cause.

The Court's third inquiry relates to the individual defendant. According to the PTS report, Mr. McDonald was born in Jamaica but is now a United States citizen. He has resided in the United States, and in the Boston area in particular, since 1975. Mr. McDonald stated that he lives with his mother and step-father in Mattapan, Massachusetts. Mr. McDonald's mother, however, stated that he lives with his girlfriend in an apartment that he rents from his mother's sister. In addition to his mother and step-father, Mr. McDonald also has a step-brother and sister in the Boston area.

Although Mr. McDonald has spent all of his adult life in the Boston area, and has family ties which would suggest that he is not a risk of flight, his danger to the community is of serious concern. Mr. McDonald has a criminal history that includes more than one drug-related conviction. Although defense counsel contended that Mr. McDonald is a drug user, rather than a drug distributor, Mr. McDonald's prior record, which includes convictions for distribution of and intent to distribute drugs indicates otherwise.[1] Mr. McDonald's record, as well as the fact that he was on probation at the time of his arrest, demonstrate a risk to the community posed by releasing the defendant.

---

[1] Defense counsel also contended that Mr. Carr told Mr. McDonald that he was going to the hotel to pick up rum, but Mr. McDonald, according to Special Agent Darling's testimony, clearly indicated to federal agents that he understood rum to mean cocaine.

Against this background, the Court concludes that there is clear and convincing evidence that there are no conditions of release which could assure the safety of the community and therefore ORDERS that the defendant MICHAEL McDONALD be detained pending trial.  Further, pursuant to 18 U.S.C. §3142(i) it is ORDERED that:

1. Mr. McDonald be, and hereby is, committed to the Custody of the Attorney General for confinement in a corrections facility, separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal;

2. Mr. McDonald be afforded reasonable opportunity for private consultation with his counselor; and

3. On order of a court of the United States or on request of an attorney for the government, the person in charge of the corrections facility in which Mr. McDonald is confined shall deliver Mr. McDonald to an authorized Deputy United States Marshal for the purpose of any appearance in connection with a court proceeding.

Review of this Order may be obtained by a defendant's filing of a motion for revocation or amendment pursuant to 18 U.S.C. § 3145(b).

Additionally, in accordance with Mr. Carr's consent to detention, the Court ORDERS the defendant, Nuerel Carr, DETAINED pursuant to 18 U.S.C. § 3142(e).

SO ORDERED.


| 1/5/05 | /S/ Joyce London Alexander |
|---|---|
| Date | United States Magistrate Judge |